[Cite as *Beach v. Beach*, 2024-Ohio-5991.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Bradley J. Beach, | : | |
| Petitioner-Appellant, | : | No. 23AP-341 |
| | | (C.P.C. No. 21DR-3287) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Laura J. Beach, | : | |
| Petitioner-Appellee. | : | |

D E C I S I O N

Rendered on December 23, 2024

**On brief:** *Grossman Law Offices*, and *John H. Cousins, IV*, for appellant. **Argued:** *John H. Cousins, IV*.

**On brief:** *Wolinetz, Horvath, & Brown LLC, Heather B. Sobel*, and *Eric M. Brown*, for appellee. **Argued:** *Heather B. Sobel*.

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations

LUPER SCHUSTER, J.

{¶ 1} Petitioner-appellant, Bradley J. Beach, appeals from a decision and judgment entry of the Franklin County Court of Common Pleas, Division of Domestic Relations, granting the motion for relief from judgment of petitioner-appellee, Laura J. Beach, and vacating the parties' October 21, 2021 decree of dissolution of marriage. For the following reasons, we reverse.

## I. Facts and Procedural History

{¶ 2} Bradley and Laura were married on April 20, 2002. In October 2020, Bradley and Laura began negotiating the terms of their separation and dissolution, and the parties agreed to set the length of the marriage from April 20, 2002 to December 31, 2020.

(May 3, 2023 Tr. at 12-13.)   The main marital asset was the parties' business, SBL Enterprises, LLC, also known as Tailored Management ("TM").   Bradley is the President and CEO of TM.   Both parties retained financial experts to generate valuations of the parties' assets, including TM, and to assist in determining an equitable division of those assets.

{¶ 3}   The parties engaged in extensive document exchange as part of their respective efforts to value TM and the other marital assets, using December 31, 2020 as the valuation date for TM.   Laura requested Bradley provide, among other documents, TM's financial statements, federal income tax returns, subsidiary information, analysis of significant accrued liabilities, credit card statements, copies of significant leases or loans, articles of incorporation and by-laws and any amendments to either, details on any pending or threatened litigation, and any other information deemed pertinent to an assessment of TM's value, including "any other assets, liabilities, trusts, or other entities or financial arrangements." (Ex. 1 at 16.)

{¶ 4}   On March 31, 2021, before the parties had finalized their separation agreement and while the parties were engaged in ongoing discovery, Bradley applied for a Paycheck Protection Program ("PPP") loan from the federal government for TM.   Bradley did not notify Laura or either of the financial experts that he had applied for the PPP loan. In April 2021, TM received a PPP loan in the amount of $9,398,213.  Subsequently, on April 21, 2021, Laura's financial expert, Courtney Sparks White, provided a valuation report that calculated the fair market value of the equity in TM as of December 31, 2020 to be $4.38 million.   As the business was valued on the date of December 31, 2020, White's proposed valuation did not include the PPP loan.

{¶ 5}   The parties finalized and executed their separation agreement on September 20, 2021, and the separation agreement defined the duration of the marriage from April 20, 2002 to December 31, 2020 for the purpose of identifying, dividing, and valuing the marital assets.   Additionally, the separation agreement stated "[e]ach of the parties have made a full and complete disclosure of all assets owned by them or in which they have any interest whether said asset is titled in their individual name, jointly or in any other manner."   (Separation Agreement at 2.)   Under the terms of the separation agreement, Bradley agreed to pay Laura a non-taxable sum of $1.9 million as a cash and

property settlement and spousal support obligation, while Bradley retained ownership of his 100 shares of TM.  Laura relinquished any right, title, and interest in TM.

{¶ 6}  On October 21, 2021, the trial court adopted the separation agreement and entered a decree of dissolution of marriage.  Subsequently, on November 4, 2021, Bradley applied for forgiveness of the PPP loan, and the loan was forgiven on November 30, 2021.  Also in November 2021, Laura first learned from a colleague that Bradley had applied for and received a PPP loan for TM.  Laura did not learn the PPP loan had been forgiven until August 2022.

{¶ 7}  Laura filed a motion for relief from judgment, pursuant to Civ.R. 60(B), on September 12, 2022.  In her motion, Laura asserted Bradley had failed to disclose: (1) the creation of a business entity, RAJ Productions, LLC, in 2021; and (2) TM's receipt of the $9,398,213 PPP loan in April 2021 and the subsequent forgiveness of the PPP loan shortly after the decree of dissolution.  Laura argued Bradley's failure to disclose this information constituted fraud, misrepresentation, or misconduct under Civ.R. 60(B)(3), and she requested the trial court "vacate the Decree of Dissolution and Separation Agreement, issue a restraining order, allow [her] to conduct discovery to pursue an equitable distribution of the undisclosed assets, award [her] all of her attorney fees, expert fees, and court costs associated with [t]his matter, and for all other relief this Court deems appropriate." (Sept. 12, 2022 Mot. For Relief from Jgmt. at 7.)

{¶ 8}  In support of her Civ.R. 60(B) motion, Laura submitted an affidavit from White, the financial expert Laura utilized during the settlement negotiations.  White stated in her affidavit that she specifically asked Brian Russell, Bradley's financial expert, about PPP loans during negotiations and "was informed that none existed" and that Russell was not aware of any PPP funds.  (White Aff. at ¶ 8.)  Further, White stated that financial document exchange and business valuation discussions continued into July 2021, nearly three months after TM received the PPP loan.  White averred that if she had known of the existence of the PPP loan, it would have impacted her valuation "either in the valuation date used, the value of the business, and/or accounting for the outcome of the loan at a future date." (White Aff. at ¶ 11.)  White stated it was her practice in valuing businesses where PPP loans were involved to include language in the valuation that appropriately addressed the

possibility of the loan being forgiven in the future. Additionally, White stated the forgiveness of the PPP loan "greatly impacts" the value of TM. (White Aff. at ¶ 13.)

{¶ 9} The trial court conducted a hearing on Laura's Civ.R. 60(B) motion on May 3, 2023. Bradley, Laura, and White testified at the hearing. Following the hearing, on June 6, 2023, the trial court issued a decision and judgment entry granting Laura's motion for relief from judgment and vacating the parties' decree of dissolution of marriage. Though the trial court rejected Laura's arguments related to RAJ Productions, the trial court determined that Bradley had misrepresented the value of TM by failing to disclose the existence of the PPP loan and that Laura relied on that misrepresentation when signing the separation agreement. Bradley timely appeals.

## II. Assignments of Error

{¶ 10} Bradley assigns the following four assignments of error for our review:

> [I.] The trial court erred, abused its discretion, and ruled against the manifest weight of the evidence by granting appellee's motion for relief from judgment under Civ.R. 60(B)(3).
>
> [II.] The trial court erred, abused its discretion, and ruled against the manifest weight of the evidence by failing to identify a meritorious claim or defense and implying that the mere possibility of a non-party's post-dissolution loan forgiveness is a meritorious claim or defense in a dissolution.
>
> [III.] The trial court erred, abused its discretion, and ruled against the manifest weight of the evidence by finding that Appellee's delay was reasonable when she knew of the alleged "misrepresentation" one month after the dissolution and threatened litigation for ten months before filing her motion.
>
> [IV.] The trial court erred, abused its discretion, and ruled against the manifest weight of the evidence by sua sponte vacating the entire decree of dissolution when Laura requested a partial "reopen[ing]" to "conduct discovery" and obtain a distribution of allegedly "undisclosed" assets.

### III.  First Assignment of Error – Grounds for Relief Under Civ.R. 60(B)(3)

{¶ 11} In his first assignment of error, Bradley argues the trial court abused its discretion when it granted Laura's motion for relief from judgment pursuant to Civ.R. 60(B)(3).

{¶ 12} To prevail on a Civ.R. 60(B) motion for relief from judgment, the movant must satisfy a three-prong test.  The movant must demonstrate: (1) it has a meritorious defense or claim to present if relief is granted; (2) it is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time and, when relying on a ground for relief set forth in Civ.R. 60(B)(1), (2), or (3), it filed the motion not more than one year after the judgment, order, or proceeding was entered or taken.  *GTE Automatic Elec., Inc. v. ARC Industries, Inc.*, 47 Ohio St.2d 146 (1976), paragraph two of the syllabus.  There will be no relief if the movant fails to satisfy any one of the prongs of the *GTE* test.  *Strack v. Pelton*, 70 Ohio St.3d 172, 174 (1994).  An appellate court reviews a trial court's decision on a Civ.R. 60(B) motion for an abuse of discretion.  *Harris v. Anderson*, 109 Ohio St.3d 101, 2006-Ohio-1934, ¶ 7.  An abuse of discretion connotes a decision that is unreasonable, arbitrary, or unconscionable.  *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983); *State ex rel. Deblase v. Ohio Ballot Bd.*, 173 Ohio St.3d 191, 2023-Ohio-1823, ¶ 27.

{¶ 13} Laura filed her motion for relief from judgment pursuant to Civ.R. 60(B)(3), which provides for relief from judgment due to fraud, misrepresentation, or other misconduct of an adverse party.  "Civ.R. 60(B)(3) applies when an adverse party's fraud, misrepresentation, or misconduct in obtaining a judgment prevents the other party from fully and fairly presenting its case."  *Dublin v. RiverPark Group, L.L.C.*, 10th Dist. No. 21AP-115, 2022-Ohio-1294, ¶ 20, citing *Luke v. Roubanes*, 10th Dist. No. 16AP-766, 2018-Ohio-1065, ¶ 23.  Laura argued Bradley misrepresented the value of TM by not disclosing the existence of the PPP loan, and the trial court agreed.  However, because the evidence Laura presented cannot reasonably be construed as demonstrating Bradley engaged in fraud, misrepresentation, or other misconduct, we find the trial court abused its discretion in granting Laura's motion for relief from judgment.

{¶ 14} There is no dispute that TM was a marital asset.  There is additionally no dispute that the parties, in negotiating the terms of their separation agreement, agreed to

define the duration of the marriage for the specific purpose of valuing the marital assets and liabilities. The separation agreement provides, under the heading "Duration of Marriage," that "for purposes of identifying, dividing, and valuing the marital assets and liabilities pursuant to R.C. 3105.171, the marriage is defined from the date of the parties' marriage, April 20, 2002, until December 31, 2020." (Separation Agreement at 2.) We find this language to be clear and unambiguous, evincing a clear intent of the parties that the value of TM be determined as of December 31, 2020. *See Dodaro v. Dodaro*, 10th Dist. No. 20AP-134, 2021-Ohio-2569, ¶ 17 (noting it is common practice in Ohio for parties in domestic relations actions to resolve the matter through negotiated settlement agreements, and " '[t]he intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement' "), quoting *Robins v. Robins*, 10th Dist. No. 04AP-1152, 2005-Ohio-4969, ¶ 15 (further quotations and citations omitted).

{¶ 15} The evidence submitted to the trial court in the Civ.R. 60(B) proceedings demonstrates the parties similarly understood the valuation date of the business to be December 31, 2020 and understood the exchange of information to be related to that December 31, 2020 valuation date. Both parties retained financial experts before the end of 2020 and the financial experts operated under the premise of a December 31, 2020 valuation date. Russell, the financial expert Bradley retained, specifically averred he "was retained to calculate the value of Mr. Beach's 100% ownership interest (100 shares) in [TM] as of December 31, 2020," indicating the parties agreed to use the December 31, 2020 valuation date before that date had even occurred. (Russell Aff. at 1.) Throughout the extensive email correspondence between counsel, the valuation date of December 31, 2020 appears consistently and repeatedly, appearing in emails dated January 13, February 23, May 12, and July 14, 2021.[1] Notably absent from these emails, and from any other location in the record, is any suggestion by either party that the December 31, 2020 valuation date was subject to change depending on TM's fiscal situation in 2021. All financial documents Bradley provided relate to 2020 and years prior, and when counsel for Bradley specifically asked whether Laura needed any additional information, it was never suggested Bradley

---

[1] Though the July 14, 2021 email erroneously states "we are valuing the estate as of 12/31/2021," the parties agreed at the hearing that this was a typo, and the reference was intended to be to December 31, 2020. (Ex. S at 1.)

needed to provide TM's financial information covering 2021. Thus, the exchange of information between the parties, though extending into 2021 as their financial experts gathered pertinent documents, was always in the context of providing information relevant to a valuation date of December 31, 2020.

{¶ 16} Nonetheless, the trial court found Laura demonstrated she was entitled to relief under Civ.R. 60(B)(3). In so concluding, the trial court relied almost exclusively on the testimony of White, Laura's financial expert. White testified the parties agreed to use a December 31, 2020 valuation date, that document exchange continued into 2021, and that she was never provided with any information regarding the PPP loan. She further testified that depending on whether the PPP loan was forgiven, the loan could have an impact on the valuation of the business. On cross-examination, White clarified that the PPP loan would have no impact on the value of TM as of December 31, 2020. Critically, White's testimony about the potential impacts of the PPP loan on the valuation of TM is relevant to Laura's claims of fraud and misrepresentation only if Bradley was under an obligation to disclose the financial state of TM past the December 31, 2020 valuation date. As explained above, neither the language of the separation agreement nor the communications between counsel during the pendency of the proceedings created such an obligation.

{¶ 17} It is also significant that Laura did not present any evidence indicating the valuation date of December 31, 2020 was ever the subject of ongoing negotiations or was something the parties ever considered revisiting. The only evidence submitted relative to any exchange of the parties' financial information covering 2021 is a chain of emails from July 2021 in which counsel for the parties go back and forth on whether there is a need to restrict personal spending as they wrap up negotiations on the dissolution. On July 9, 2021, Bradley's counsel mentions "one ancillary item," noting that although Bradley had not restricted Laura's access to the corporate credit card during their negotiations, it may be time to discuss some restrictions as the parties approach the end of negotiations. (Ex. T, July 9, 2021 Email at 2.) Bradley's counsel then sent a follow-up email on July 14, 2021 with specific references to the amounts spent on the corporate credit card over the past four months. In response, Laura's counsel asked for copies of the corporate credit card statements from that time period as well as the distribution summary covering the same time. Bradley's counsel responded questioning why such documents would be necessary,

reiterating that the parties were operating with a December 31, 2020 valuation date and that he was simply asking for spending restrictions.  Laura's counsel then responded, writing:

> If his "income" – meaning the distributions that he is taking – is more than what we included in the valuation, then we've potentially got some issues for the 2021 time period. So, I need to see his spending for the last 6 months (distributions/credit card payments on his behalf/any other spending on his behalf from the business.) Your client knows exactly how much Laura has been spending – he has her income information and knows what has been paid for by the business. It's only fair for Laura to have the same information for Brad's spending.

(Ex. S, July 14, 2021 Email at 1.)  Laura was asked about these emails during the hearing, and she testified they were in the context of Bradley and Laura continuing to share "expenses and funds" as they negotiated the terms of their dissolution.  (Tr. at 109.)  It is clear from these emails that although there was some discussion of the parties' finances into 2021, the context was the parties' personal spending, not the value or appropriate valuation date of TM.  Subsequent emails between counsel on September 1 and 9, 2021 indicate the discussion of income and distributions was related to the parties' work on the child support deviation entry, with counsel for Bradley expressly stating "Brad is not willing to further negotiate the issue of income for purposes of child support." (Ex. 1 at 79.)  The lone reference to the parties' incomes and Brad's distributions into 2021 cannot reasonably be construed as either party suggesting the December 31, 2020 valuation date for TM was subject to change for purposes of negotiating the separation agreement.

{¶ 18} Instead, the evidence provided in support of Laura's Civ.R. 60(B) motion indicates the parties determined the December 31, 2020 valuation date early in their negotiations and the financial experts gathered information and prepared their reports using the December 31, 2020 valuation date.  Stated another way, the parties set the valuation date in order to facilitate the exchange of specific financial information related to the valuation of TM.  They did not first engage in the exchange of this highly detailed, voluminous financial information with the goal of determining an appropriate valuation date.  Thus, Laura's suggestion that she may not have agreed to the December 31, 2020 valuation date had she known of the subsequent PPP loan amounts to little more than her

reevaluation of the proceedings with the benefit of hindsight. However, Laura's rethinking of the settlement agreement with the benefit of hindsight does not demonstrate Bradley engaged in fraud or misrepresentation under Civ.R. 60(B)(3). *See McLoughlin v. McLoughlin*, 10th Dist. No. 05AP-621, 2006-Ohio-1530, ¶ 24 ("[c]ourts must be wary and ensure that relief under Civ.R. 60(B) is justified, not merely a tool used 'to circumvent the terms of a settlement agreement simply because, with hindsight, [the moving party] has thought better of the agreement which was entered into voluntarily and deliberately' "), quoting *Biscardi v. Biscardi*, 133 Ohio App.3d 288, 292 (7th Dist.1999). Therefore, it was unreasonable for the trial court to rely on Laura's suggestion, without any evidentiary support that the valuation date was ever contested, that she might have renegotiated the business valuation date had she known of the PPP loan as its basis for finding Bradley engaged in misrepresentation under the meaning of Civ.R. 60(B)(3).

{¶ 19} Despite the plain language of the separation agreement, the parties' understanding of the December 31, 2020 valuation date throughout the negotiations, and the lack of any evidence indicating the valuation date was ever legitimately subject to change based on TM's financial status into 2021, Laura argues Bradley was nonetheless under an obligation to continue to provide financial information related to the value of TM past the valuation date. In support of her position, Laura points to two additional provisions of the separation agreement. The first provision, entitled "Disclosure," provides "[e]ach of the parties have made a full and complete disclosure of all assets owned by them or in which they have any interest whether said asset is titled in their individual name, jointly or in any other manner." (Separation Agreement at 2.) The second provision, entitled "Failure to Disclose," provides "[p]ursuant to R.C. 3105.171, the parties acknowledge that, if either party has substantially and willfully failed to disclose marital property, separate property, or other assets, debts, income, or expenses during the course of these domestic relations proceedings, the Court may compensate the offended spouse with a distributive award or with a greater award of marital property, not to exceed three (3) times the value of the marital property, separate property, or other assets, debts, income, or expenses that are not disclosed by the other spouse." (Separation Agreement at 12.) Laura asserts these provisions imposed an obligation of continuing disclosure upon

the parties and argues Bradley's failure to disclose the existence of the PPP loan violated these provisions and, thus, misled her into signing the separation agreement.

{¶ 20} The flaw in Laura's argument that the parties had an obligation of continuing disclosure is that it isolates the Disclosure and Failure to Disclose provisions from the rest of the separation agreement. *Nour v. Shawar*, 10th Dist. No. 13AP-1070, 2014-Ohio-3016, ¶ 14 ("this court has emphatically stated that 'contracts must be read as a whole, and individual provisions must not be read in isolation' "), quoting *Bank of New York Mellon v. Rankin*, 10th Dist. No. 12AP-808, 2013-Ohio-2774, ¶ 31. However, these provisions must be considered within the context of the whole document, including the Duration of Marriage provision. *Gahana v. Ohio Mun. Joint Self-Ins. Pool*, 10th Dist. No. 20AP-265, 2021-Ohio-445, ¶ 12 (in interpreting a contract, courts "must read words and phrases in context and apply the rules of grammar and common usage"). As the parties unequivocally agreed to define the duration of the marriage as having ended on December 31, 2020 for the express purpose of valuing the marital assets, the obligation to disclose contained within the separation agreement must be understood as an obligation to continue to disclose, through the duration of the domestic relations proceedings, information relative to the December 31, 2020 valuation date. To interpret these provisions as requiring the parties to continue to disclose valuation information for TM's value beyond December 31, 2020 would render the Duration of Marriage provision meaningless. *Bank of New York Mellon* at ¶ 31 ("[i]n contract construction, the court should give effect to every provision within the contract, if possible, and if one construction of a doubtful condition would make that condition meaningless, and it is possible to give it another construction that would give it meaning and purpose, then the latter construction must prevail") (further quotations and citations omitted). Thus, the separation agreement cannot reasonably be construed as requiring the parties to continue to exchange information relative to the value of the marital assets past December 31, 2020. To be clear, it is not that the parties did not have to continue to exchange information past December 31, 2020; instead, the agreement requires that the information the parties continued to exchange past that date is information related to the value of the assets as of December 31, 2020. As Bradley did not apply for the PPP loan until March 2021, the existence of the PPP loan could not have affected the value of TM as of December 31, 2020.

{¶ 21} We also note that while Laura relies on White's averment in her affidavit that she specifically asked about PPP loans and was told none existed, White also testified during the hearing that she made this request before March 31, 2021, the date of the PPP application. Thus, White's request for information about PPP loans is not indicative of Bradley's concealing, failing to disclose, or otherwise misrepresenting information related to the value of TM.

{¶ 22} For these reasons, we find the trial court abused its discretion in determining Laura demonstrated Bradley misrepresented the value of TM by failing to disclose the existence of the PPP loan. Because Laura could not demonstrate she was entitled to relief under the grounds provided in Civ.R. 60(B)(3), she did not satisfy the second prong of the *GTE* test, and we, therefore, sustain Bradley's first assignment of error. As noted above, where the movant fails to satisfy any one prong of the *GTE* test, there can be no relief from judgment under Civ.R. 60(B)(3). *Strack*, 70 Ohio St.3d at 174. Thus, our resolution of Bradley's first assignment of error requires reversal of the trial court's decision and judgment entry granting Laura's motion for relief from judgment.

## IV. Second, Third, and Fourth Assignments of Error – Meritorious Claim or Defense, Reasonable Time, and Extent of Trial Court's Relief

{¶ 23} In his second assignment of error, Bradley argues the trial court abused its discretion in determining Laura asserted a meritorious claim or defense. In his third assignment of error, Bradley argues the trial court abused its discretion in finding Laura filed her Civ.R. 60(B) motion within a reasonable time. In his fourth and final assignment of error, Bradley argues the trial court erred in vacating the entire decree of dissolution. Having sustained Bradley's first assignment of error and having found the first assignment of error to be dispositive of the entire matter, requiring reversal of the trial court's decision and judgment entry, Bradley's second, third, and fourth assignments of error are moot, and we need not address them.

## V. Disposition

{¶ 24} Based on the foregoing reasons, the trial court abused its discretion in determining Laura demonstrated she was entitled to relief under Civ.R. 60(B)(3) from the parties' decree of dissolution of marriage because Laura was unable to demonstrate Bradley

misrepresented the value of TM by failing to disclose the existence of the PPP loan.  Having sustained Bradley's first assignment of error, rendering moot Bradley's second, third, and fourth assignments of error, we reverse the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations.

*Judgment reversed.*

JAMISON, J., concurs.
BOGGS, J., dissents.

BOGGS, J., dissenting.

{¶ 25}  I respectfully dissent. I do not believe the trial court abused its discretion in granting petitioner-appellee, Laura J. Beach's, motion for relief from judgment under Civ.R. 60(B)(3).

{¶ 26}  The majority is correct that both Laura and petitioner-appellant, Bradley J. Beach, retained financial experts before the end of 2020 and charged them with valuing Tailored Management ("TM") as of December 31, 2020.  The undisputed evidence showed that this decision was made for ease and convenience of collecting end of year documents. Meanwhile, Laura and Bradley continued to be married throughout most of 2021, and Laura continued to hold a 50 percent equity interest in TM until the settlement agreement was finalized in September 2021.

{¶ 27}  The majority insists that the evidence demonstrates that the "parties similarly understood the valuation date of the business to be December 31, 2020, and understood the exchange of information to be related to that December 31, 2020 valuation date."  (Maj. Decision at ¶ 15.)  However, this ignores the uncontroverted testimony of Courtney Sparks White, Laura's financial expert, that during "ongoing negotiations" she would expect a $9.4 million Paycheck Protection Program ("PPP") loan to be disclosed White further testified that she has worked on hundreds of cases for parties who have ultimately changed the initially agreed upon valuation date for marital and separate property based on information received pursuant to ongoing requests and negotiations.

{¶ 28}  Further, I do not agree with the majority's attempt to harmonize the settlement agreement's marriage end date provision with its "Disclosure" and "Failure to Disclose" provisions.  Those provisions should not be read as limiting the parties' disclosure

obligations to matters prior to December 31, 2020, and to read those provisions more expansively does not "render the Duration of Marriage provision meaningless," as the majority suggests. (Maj. Decision at ¶ 20.)

{¶ 29} To the contrary, those provisions should serve to ensure that the entire agreement, including the Duration of Marriage provision, was negotiated fairly, as its plain language leads the parties, and the court, to assume that both Laura and Bradley had been fully transparent regarding their financial assets. The majority's reading, however, serves as a shield for the party withholding significant financial information prior to the execution of the settlement agreement. The flaw with the majority's reasoning that the marriage-end date protects Bradley from having to disclose significant financial events in 2021 is that the parties were still married through the majority of 2021, and Laura still had a 50 percent equity interest in TM until she executed the separation agreement in September of 2021. The phrase "these domestic relations proceedings" in the "Failure to Disclose" provision, includes all the negotiations regarding TM's value, which took place in 2021. Withholding significant financial information from Laura, while still married and while she was an equal co-owner of TM, prevented her from fully and fairly being able to negotiate the marriage end date.

{¶ 30} To be clear, Laura held a 50 percent interest in TM when Bradley applied for and received the PPP loan for $9.4 million. The loan was based on TM's performance in 2019 and 2020, a time when Laura held a 50 percent interest in TM. Tasking financial experts to value TM as of December 31, 2020 does not change Laura's legal status as a wife or co-owner of TM. On behalf of Laura, who remained an equal co-owner of TM, White asked for information regarding PPP loans, and she testified that it was her expectation that the $9.4 million dollar PPP loan should have been disclosed. Given the trial court's broad discretion to ensure equitable results in a divorce, I cannot find that the trial court abused its discretion in determining that Laura was entitled to relief under Civ.R. 60(B)(3). Bradley's failure to disclose the PPP loan to an equal co-owner of TM resulted in a significant disadvantage in Laura's ability to fully and fairly negotiate the settlement agreement. Accordingly, I would overrule Bradley's first assignment of error.

{¶ 31} In Bradley's second assignment of error, he argues that the trial court erred and abused its discretion in failing to identify a meritorious claim or defense in Laura's

motion under *GTE Automatic Elec., Inc. v. ARC Industries, Inc.*, 47 Ohio St.2d 146 (1976). Under the *GTE* test, a party need only allege a meritorious claim or defense, it need not prove that it will prevail on that claim or defense. *Rose Chevrolet, Inc. v. Adams,* 36 Ohio St.3d 17, 20 (1988); *Meglan, Meglan & Co., Ltd. v. Bostic*, 10th Dist. No. 05AP-831, 2006-Ohio-2270, ¶ 8. Although proof of success is not required, the party must support its alleged claim or defense with operative facts that have enough specificity to allow the trial court to judge the merit of the claim or defense. *Miller v. Susa Partnership, L.P.*, 10th Dist. No. 07AP-702, 2008-Ohio-1111, ¶ 16; *Chirico v. Home Depot*, 10th Dist. No. 05AP-217, 2006-Ohio-291, ¶ 10; *Bostic* at ¶ 8. Mere general allegations or broad conclusions are insufficient to warrant relief. *Lakhi v. Healthcare Choices & Consultants*, 10th Dist. No. 07AP-904, 2008-Ohio-1378, ¶ 20.

{¶ 32} Bradley argues that Laura failed to present a meritorious claim because White's testimony indicates that the loan would not have affected the business valuation prior to its forgiveness, as the loan "would have been a wash" with the cash received equaling the additional debt incurred. (Appellant brief at 39.) Bradley also argues that Laura's claim rested on the PPP loan being forgiven, which did not occur until after the dissolution. (Appellant's Brief at 41.) Again, I would find that the trial court did not abuse its discretion, as it looked to White's affidavit wherein she stated that knowledge of the PPP loan "would have impacted my valuation, either in the valuation date used, the value of the business, and/or accounting for the outcome of the loan at a future date," that forgiveness of the PPP loan "greatly impacts the value of the business," and that Bradley's failure to disclose the loan "created an unjust windfall to" Bradley. (White Aff. at 3.) I, therefore, would overrule Bradley's second assignment of error.

{¶ 33} Bradley's third assignment of error goes to the timeliness of Laura's Civ.R. 60(B) motion. For relief under Civ.R. 60(B)(1), (2), or (3), the movant must seek relief "within a reasonable time, and * * * not more than one year after the judgment." Relief under Civ.R. 60(B)(4) and (5) is not subject to the one-year limitation but must still be sought within a reasonable time. This court has stated that "[j]ust because a Civ.R. 60(B) motion is filed within one year of the underlying judgment does not mean the motion was filed within a reasonable time." *GMAC Mtge. v. Lee*, 10th Dist. No. 11AP-796, 2012-Ohio-1157, ¶ 21, citing *EMC Mtge. Corp. v. Pratt*, 10th Dist. No. 07AP-214, 2007-Ohio-4669, ¶ 8,

citing *Adomeit v. Baltimore*, 39 Ohio App.2d 97, 106 (8th Dist.1974). "The relief provided by Civ.R. 60(B) is equitable in nature, and a party must act diligently to be entitled to it." *Id.* at ¶ 23, citing *Morris v. Grubb*, 2d Dist. No. 15177, 1996 Ohio App. LEXIS 1090 (Mar. 8, 1996). "Failure to seek relief from judgment for a substantial period of time after the movant is aware of the grounds for relief demonstrates a lack of due diligence." *Id.*, citing *Morris.*

{¶ 34} Bradley argues that Laura did not timely file her Civ.R. 60(B) motion because she waited a year to file the motion after learning that Bradley had applied for and received a PPP loan for TM. Bradley also claims that the PPP database was public, giving Laura and her expert access to the existence of TM's PPP loan the entire time they were negotiating the separation agreement. Bradley also argues that Laura waiting for the information that the PPP loan was forgiven before filing her Civ.R. 60(B) motion serves as an admission/proof that the PPP loan was "nothing" unless it was forgiven.

{¶ 35} I do not believe the trial court abused its discretion in finding that Laura's motion was brought within a reasonable time and within one year after the decree of dissolution was entered. Laura argues that the timing of her motion, filed less than one year after the parties' dissolution, was reasonable given the circumstances. She reasonably filed her motion shortly after learning that TM obtained a PPP loan, within one month of learning that the PPP loan had been forgiven, and after attempting to handle the matter through counsel without the court's involvement. Therefore, I would overrule Bradley's third assignment of error.

{¶ 36} In Bradley's fourth assignment of error, he argues the trial court erred, abused its discretion, and lacked jurisdiction when it sua sponte vacated the entire decree of dissolution. Bradley argues that the trial court gave relief that Laura never requested, that Laura only requested a narrow reopening of the case, and that "[a] court * * * has no authority to *sua sponte* vacate a judgment under Civ.R. 60(B)." *Archer v. Vallette*, 10th Dist. No. 21AP-288, 2022-Ohio-3560, ¶ 18.

{¶ 37} However, as the majority acknowledges, in her Civ.R. 60(B) motion, Laura specifically requested that the court "vacate the Decree of Dissolution and Separation Agreement" as well as issue a restraining order, allow for discovery, and award her attorney fees, expert fees, and court costs associated with this matter. (Civ.R. 60(B) Mot. for Relief

at 7.)  Because the trial court did not grant relief that exceeded what Laura requested in her motion, I would also overrule Bradley's fourth assignment of error.

{¶ 38}  For these reasons, I respectfully dissent and I would affirm the trial court's decision granting Laura's Civ.R. 60(B) motion.

————————————